**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MEAGAN WALLS,                                    Case No. 1:11-cv-413

           Plaintiff,                          Barrett, J.
                                                 Bowman, M.J.

   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Meagan Walls filed this Social Security appeal in order to challenge the

Defendant's findings that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding

through counsel, Plaintiff presents three claims of error for this Court's review.  As

explained below, I conclude that the ALJ's finding of non-disability should be

AFFIRMED, because it is supported by substantial evidence in the administrative

record.

### I.  Summary of Administrative Record

On June 19, 2008, Plaintiff filed an application for Supplemental Security Income

alleging a disability onset date of February 9, 1988.  (Tr. 30).[1]  After Plaintiff's claims

were denied initially and upon reconsideration, she requested a hearing *de novo* before

an Administrative Law Judge (ALJ).  On June 4, 2010, Plaintiff, who was represented by

counsel, appeared and testified at a hearing before ALJ Samuel Rodner.  (Tr. 626-60).

---

[1]According to the Commissioner, Plaintiff has filed a number of prior applications for
Social Security benefits, including, an application for Disability Insurance Benefits in
March 2006.  (Tr. 21).  This claim was denied at the initial stage and was not pursued
further.  (Tr. 21).  Consequently, the relevant period for her current claim for SSI starts in
March 2006. (Tr. 24).

A vocational expert (VE), Robert Breslin, also appeared and testified at the hearing. Thereafter, on June 30, 2010, ALJ Rodner denied Plaintiff's application in a written decision. (Tr. 21-29).

The record on which the ALJ's decision was based reflects that Plaintiff was 20 years old at the time of his application, and had an eighth grade education. (Tr. 27). Plaintiff has past relevant work as a house painter. (Tr. 27).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "bipolar affective disorder unspecified, post-traumatic stress disorder, a history of polysubstance abuse/dependence reportedly in early remission, borderline intellectual functioning, and low back pain." (Tr. 23). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1, and Plaintiff does not specifically argue that the ALJ erred in that conclusion before this Court. (Tr. 24). The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform medium work with the following limitations:

> She can lift/carry/push/pull up to 50 pounds occasionally and 25 pounds frequently, and she can sit and stand/walk for a total of about six hours each in an eight hour workday. Mentally, she is able to comprehend, remember, and carry out simple task instructions. She can maintain attention and make simple decisions. Although she will likely perform best in a setting that involves minimal interaction, she can relate adequately on a superficial basis. She can adapt to a setting in which duties are routine and predictable. She can carry out simple tasks in situations where a supervisor or coworker is present to explain tasks and give directions, and occasionally redirect.

(Tr. 24B-25). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ

2

concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy, including hand packer and cleaner II. (Tr. 28). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. (Tr. 28).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff asserts the ALJ erred by: (1) determining that Plaintiff was capable of sustaining remunerative employment; (2) improperly assigning greater weight to the opinion of the non-examining physician; and (3) and selectively relying on Plaintiff's daily activities as evidence that she is capable of performing gainful activity. Upon close analysis, I conclude that none of the asserted errors require reversal or remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported

3

by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national

economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

**B.  Consideration of Plaintiff's RFC**

1.  *Relevant Evidence*

The record indicates that Plaintiff sustained severe physical and sexual abuse as a child.  She was removed from her parents home when she was four years old and placed with her maternal grandparents.  She continued to experience abuse and was placed in the custody of Child Protective Services in 2000 and lived in more than 5 foster homes since that time.  She was suspended from school numerous times for arguing with teachers, screaming and fighting with students, and stealing.  She dropped out of school in the ninth grade.

Plaintiff suffers from  bipolar disorder and post-traumatic stress disorder, depression, anger, crying spells, mood swings and suicidal ideation.  (Tr. 247, 475-77). She has a long history of mental health treatment and had multiple hospitalizations due to mental health issues from 2001 to 2003.

With respect to the relevant period relating to Plaintiff's current disability application, the record indicates that Plaintiff began treating with Dr. Holliday, a primary

care physician in October 2007, for bipolar disorder and chronic back pain. Dr. Holliday's treatment notes evidence depressed mood, irritability, tearfulness, decreased motivation, suicidal ideation, racing thoughts, and decreased need for sleep. (Tr. 228, 240 242, 247, 248).

In September 2008, Dr. Dale Seifert, a psychologist, examined Plaintiff at the request of the state agency. (Tr. 191-96). At that time, Plaintiff alleged that she was disabled based on her bipolar disorder and learning problems. (Tr. 195). Plaintiff reported that she occasionally did chores and went shopping with her husband. (Tr. 194). Intelligence testing showed that Plaintiff was in the "borderline intellectual functioning range"—her Verbal IQ was 77, her Performance IQ was 70, and her Full Scale IQ was 72 (Tr. 194-95). Dr. Seifert diagnosed Plaintiff with bipolar disorder, post-traumatic stress disorder, and borderline intellectual functioning (Tr. 196). He assigned Plaintiff a Global Assessment of Functioning (GAF) score of 63, which indicated mild symptoms or limitations.[2] Dr. Seifert opined that Plaintiff had mild limitations in her ability to understand and follow instructions. (Tr. 196). She had moderate limitations in her ability to relate to others, maintain attention to perform simple, repetitive tasks, and withstand work stress and pressure. (Tr. 196).

On October 14, 2008, Dr. Tasneem Khan, a state agency physician, reviewed Plaintiff's medical record and provided a mental capacity assessment. (Tr. 198-215).

---

[2]A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. The DSM-IV categorizes individuals with a score of 63 as having "mild symptoms ... or some difficulty in social, occupational, or school functioning." *Id.*

Dr. Khan opined that Plaintiff was able to comprehend, remember, and carry out simple tasks instructions. (Tr. 200). She could maintain attention and make simple decisions, and she could interact with others on a superficial basis, although she would do best with minimal interaction. (Tr. 200). Dr. Khan also opined that Plaintiff could adapt to a setting where duties were routine and predictable, and she could carry out simple tasks when a supervisor or coworker was present to explain tasks, give instructions, and occasionally redirect. (Tr. 200). Dr. Khan's Psychiatric Review Technique form indicates that Plaintiff's impairments do not meet any of the Listings for mental impairments. Notably, with respect to the rating of functional limitations outlined paragraph "B" of the relevant listings[3], Dr. Khan found that Plaintiff's mental impairments resulted in moderate restriction in activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. (Tr. 212).

In November 2008, Dr. Holliday noted that Plaintiff's mood was stable and she was "doing well on her present medications." (Tr. 232). Dr. Holliday noted that Plaintiff had stopped taking her medication for awhile because she was trying to get pregnant, but she had since resumed taking her medication. (Tr. 232). However, in an undated assessment, Dr. Holliday, opined that Plaintiff's "depressed mood/irritability preclude employment at this time." (Tr. 228).

---

[3] If the claimant has a medically determinable mental impairment, the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" with respect to "four broad functional areas": "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). These four functional areas are commonly known as the "B criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 et seq. The degree of limitation in the first three functional areas is rated using the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using the following four-point scale: none, one or two, three, four or more. *Id.*

Dr. Holliday retired and Dr. Bishop took over the practice.  Plaintiff continued to treat with Dr. Bishop and his  treatment notes indicate that Plaintiff reported symptoms of crying spells, anger, and mood swings. (Tr. 473-492).  Dr. Bishop prescribed several medications including Seroquel, Celexa, Wellbutrin, and Abilify.  *Id.*

In April 2010, Plaintiff sought treatment at Mental Health Access Point. (Tr. 433-42).  Plaintiff complained that she had outbursts of anger and did not like being around people.  (Tr. 433).  At that time, she was "focused on being a homemaker and caring for her children."  (Tr. 433).  Plaintiff reported that she had relapsed on alcohol and marijuana in December 2009—after being sober for nearly three years—when her sister was murdered.  (Tr. 436-37).  But she reported that she had last used marijuana "a couple of weekends ago." (Tr. 436).  Plaintiff was diagnosed with bipolar disorder and post-traumatic stress disorder.  (Tr. 433).  The examiner noted that Plaintiff experiences severe symptoms and severe impairment in social and occupational functioning.  (Tr. 435).

Additionally, in June 2010 (five days after the administrative hearing), Plaintiff was hospitalized after taking multiple medications.  (Tr. 612-15).  Plaintiff said she was "tired of getting blamed for stuff" so she took Valium, Vicodin, Percocet, and muscle relaxers.  (Tr. 615).  She indicated that she was not trying to kill herself and tested positive for marijuana and opiates at this time.  (Tr. 615, 622).  She was discharged the same day in "much improved" condition.  (Tr. 619).[4]

---

[4]  Plaintiff's statement of error's focuses primarily on the ALJ's treatment of her mental impairments.  However, the record also indicates that Plaintiff occasionally complained of back pain to her primary care physician.  (Tr. 229-49, 375, 386).  Plaintiff received conservative treatment, including pain medication, physical therapy, and injections for her pain complaints. (Tr. 231, 239, 246- 47, 386).  The record also contains mostly normal or mild findings relating to Plaintiff's low back.  Notably, an April 2008 lumbar spine x-ray showed "mild straightening" but was "otherwise negative." (Tr. 267, 515). Plaintiff's back pain was of an unclear etiology, and

*2. ALJ Decision*

As noted above, after reviewing the medical evidence, the ALJ determined that Plaintiff could perform a reduced range of medium work with several nonexertional limitations due to her mental impairments. Specifically, the ALJ found that Plaintiff was able to comprehend, remember, and carry out simple task instructions; maintain attention and make simple decisions; she could relate to others adequately on a superficial basis, although she would do best with minimal interaction; she could adapt to a setting in which duties are routine and predictable; and she could carry out simple tasks in situations where a supervisor or coworker is present to explain tasks, give directions, and occasionally redirect. (Tr. 24B-25).

In making this determination, the ALJ assigned great weight to the mental limitations found by Dr. Kahn, the non-examining state agency physician who reviewed Plaintiff's medical file in 2008. The ALJ determined that Dr. Kahn's findings were supported by the overall record. The ALJ also rejected the assessment of Dr. Holliday, plaintiff's treating physician, because his findings were inconsistent with his treatment notes. In formulating Plaintiff's RFC, the ALJ's decision also indicates that he considered Plaintiff's testimony relating to her daily activities, inconsistent statements relating to her use of marijuana and her conservative treatment history.

As detailed above, Plaintiff's statement of errors asserts that the ALJ's RFC assessment failed to properly consider Plaintiff's ability to sustain remunerative employment and improperly assigning greater weight to the opinion of the non-examining physician. Plaintiff also asserts that the ALJ selectively relied on her daily

---

conservative treatment was recommended. (Tr. 498, 500). A December 2008 lumbar spine MRI was largely normal and showed only mild abnormalities. (Tr. 264).

activities as evidence that she is capable of performing gainful activity. Upon careful review and for the reasons that follow, the undersigned finds that Plaintiff's assertions lack merit and the ALJ's RFC finding is substantially supported.

### 3. Plaintiff's ability to sustain employment

Plaintiff's first assignment of errors asserts that the ALJ's RFC assessment failed to properly consider her ability to sustain remunerative employment. Social Security Ruling 96-8p requires the ALJ to provide a narrative discussion as to how he or she arrived at a claimant's RFC and provides in relevant part:

> "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

According to SSR 96-8p, an RFC is an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and continuing" basis. *See* SSR 96-8p at 28. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *See also Sims v. Apfel*, 172 F.3d 879, 880 (10th Cir. 1999) (defining a "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent work schedule").

In arguing that the ALJ improperly determined that Plaintiff could sustain remunerative employment, Plaintiff cities to her testimony that she gets distracted easily due to racing thoughts, does not understand a lot of words or math, reads at a 4th grade level and is afraid of people. (Tr. 637). She also testified that she has trouble with

concentration and has trouble staying on task for long before she gets distracted or irritable and that she argues, fights, tells people to leave her alone, and leaves the area if they do not.

Plaintiff further notes that the ALJ failed to consider and/or mention a third-party witness statement provided by her sister-in-law, Judy Walls.  Notably, Ms. Walls indicated Plaintiff mostly stays in her pajamas (Tr. 106), bathes when reminded, forgets food is cooking and burns it.  (Tr. 107).  She also states Plaintiff is not reliable to finish house work (Tr. 108), does not understand money or counting of it (Tr. 108) and she needs either her husband or other family members to accompany her when she goes places.  (Tr. 109).  Additionally she does not have the motor skills to understand simple tasks and has trouble remembering events and instructions.  (Tr. 110).  She does not understand the difference between reality and her own made up world, and family events end up with conflict.  (Tr. 112).

Plaintiff argues that her testimony and Judy Walls statements are supported by Dr. Holliday's and Dr. Bishop's office notes which evidence such symptoms as depressed mood, irritability, tearfulness, decreased motivation, suicidal ideation, racing thoughts, decreased need for sleep, crying spells, anger, and mood swings.  (Tr. 228, 240, 242, 247, and 248, 473-492).  Plaintiff further cites to treatment notes from MHAP indicating that Plaintiff experiences severe symptoms and severe impairments in social and occupational functioning. (Tr. 435).

The ALJ's decision, however, indicates that he properly considered such evidence.  With respect to Plaintiff's testimony, the ALJ found her allegations were "partially but not fully credible." (Tr. 25).  The ALJ noted that Dr. Holliday's opinion was inconsistent with treatment notes from November 2008, which indicated Plaintiff was

stable and "doing well" on her medications, which she had just resumed taking after her pregnancy. (Tr. 26, 232). As noted by the Commissioner, the record often shows that Plaintiff's mental symptoms were well-controlled when she took her medication, and she was often found to be doing well from a mental health standpoint, (Tr. 232, 239, 242, 246). On many other occasions, Plaintiff had no complaints about her mental health when she sought treatment.

Furthermore, the ALJ did not err in failing to specifically identify the third-party statement provided by Judy Walls. In *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir.1983), the Sixth Circuit held that "[p]erceptible weight must be given to lay testimony where ... it is fully supported by the reports of the treating physicians." While the testimony and statements of lay witnesses must be considered, an ALJ does not have to discuss every piece of evidence presented as long as the record is developed fully and fairly. *Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir.1993); cf. *Higgs v. Bowen*, 880 F.2d 860, 864 (6th Cir.1988) (holding that the Appeals Council did not err by failing to "spell out" in its opinion the weight it attached to lay witness testimony where the Council's opinion stated that it "considered the entire record which was before the administrative law judge, including the testimony at the hearing"). In this case, Plaintiff is correct in her assertion that the ALJ did not specifically address the written statements of her sister-in-law and friend in his decision. Nevertheless, the ALJ did specifically indicate that he carefully considered all the evidence, including documents identified in the record as exhibits, testimony at the hearing, and any arguments presented. Accordingly, the ALJ did not err in failing to give perceptible weight to the testimony of Judy Walls.

For these reasons, Plaintiff's first assignment of error should be overruled as the ALJ's RFC assessment is supported by substantial evidence.[5]

## C. ALJ's weighing of the opinion evidence

Plaintiff's second assignment of error asserts that the ALJ improperly credited the opinion of Dr. Kahn, the non-examining state agency physician over the findings of Dr. Holliday, Plaintiff's treating physician.  Plaintiff further asserts that the ALJ erred in assigning reduced weight to Dr. Seifert's opinion.  Each assertion will be address in turn.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'"  *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004).  If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician.  *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

---

[5] Plaintiff's first assignment of error also alleges that the ALJ posed an improper hypothetical question to the vocational expert by failing to include all relevant limitations (Doc. 6 at 9-10).  The Commissioner asserts that this allegation is simply another challenge to the ALJ's RFC finding. The undersigned agrees.  As discussed above, the ALJ's RFC finding was supported by substantial evidence and should not be disturbed.

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.*, No. 09–6081, 2010 WL 3521928, at *6 (6th Cir. Aug. 31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

As such, the opinions of treating and examining sources are generally entitled to more weight than opinions of consulting and non-examining sources. 20 C.F.R. § 404.1527(d); see *also West v. Comm'r Soc. Sec. Admin.*, 240 Fed. Appx. 692, 696 (6th Cir. 2007) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)) ("[R]eports from treating physicians generally are given more weight than reports from consulting physicians ...."). However, an ALJ need not credit a treating physician opinion that is conclusory and unsupported. *See Anderson v. Comm'r Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence).

Furthermore, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)", opinions on issues reserved to the Commissioner are generally not

entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

    1. *Dr. Khan*

    Here, the ALJ assigned great weight to Dr. Khan's opinion relating to Plaintiff's mental limitations finding that his limitations were "reasonably well-supported by the overall objective evidence." (Tr. 26). As noted above, with respect to the paragraph B criteria, Dr. Khan found that Plaintiff's mental impairments resulted in moderate restriction in activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace.

    As noted by the Commissioner, Dr. Khan's findings were based on objective testing, clinical findings, and diagnoses from Dr. Seifert's September 2008 consultative examination. (Tr. 191-96, 200). Dr. Khan acknowledged the limitations identified by Dr. Seifert. (Tr. 196, 200). Dr. Khan also considered statements from third parties, as well as Plaintiff's own complaints, about her abilities and limitations. (Tr. 200). Dr. Khan also reviewed medical records from Plaintiff's previous hospitalizations from 2001 to 2003 when Plaintiff was between the ages of 13 and 15. Dr. Kahn noted that the record did not indicate that Plaintiff has received inpatient therapy since that remote time period and "she has been able to enter into a relationship, is now married and has a child." Furthermore, the record indicates that Plaintiff has received conservative mental health treatment and has had good results with medication therapy. Accordingly, the undersigned finds that Dr. Kahn's findings were supported by and consistent with the evidence of record. *See* 20 C.F.R. § 404.1527(f); Social Security Ruling 96-6p; see also *Atterbery v. Secretary of Health and Human Services*, 871 F.2d 567, 570 (6th Cir.1989) (Opinions of non-examining State agency psychological adviser

that are consistent with the evidence of record represent substantial evidence to support the Administrative Law Judge's findings). Accordingly, the ALJ reasonably determined that Dr. Khan's assessment was entitled to great weight.[6]

*2. Dr. Seifert*

With respect to Dr. Seifert, Plaintiff argues that the ALJ erred in affording reduced weight to Dr. Seifert's opinion because his IQ scores were not consistent with the rest of the record. In September 2008 Dr. Seifert, a state agency physician, examined Plaintiff and administered Intelligence testing which showed that Plaintiff was in the "borderline intellectual functioning range"—her Verbal IQ was 77, her Performance IQ was 70, and her Full Scale IQ was 72. (Tr. 194-95). Dr. Seifert diagnosed Plaintiff with bipolar disorder, post-traumatic stress disorder, and borderline intellectual functioning. (Tr. 196). He assigned Plaintiff a Global Assessment of Functioning (GAF) score of 63, which indicated mild symptoms or limitations. Dr. Seifert opined that Plaintiff had mild limitations in her ability to understand and follow instructions, and moderate limitations in her ability to relate to others, maintain attention to perform simple, repetitive tasks, and withstand work stress and pressure. (Tr. 196).

In his decision, the ALJ rejected Dr. Seifert's findings relating Plaintiff's IQ scores (Tr. 24B). The ALJ determined that the record contained significant evidence that contradicted Plaintiff's IQ scores during her examination with Dr. Seifert. (Tr. 24B). Specifically, during a school evaluation in 2004 Plaintiff's obtained IQ scores of Verbal

---

[6] In her reply brief, Plaintiff asserts for the first time that the ALJ improperly relied on Dr. Khan's assessment because it was not based on a complete record. (Doc. 9 at 1-3). Notably, issues raised for the first time in a reply brief are not properly before this [C]ourt ." *U.S. v. Perkins*, 994 F.2d 1184, 1191 (6th Cir.1993). In any event, Plaintiff's assertion lacks merit. Dr. Khan's findings were consistent with the "overall record." Further, Plaintiff fails to cite to any later-acquired evidence that establishing that Plaintiff's limitations are greater than those found by the ALJ in his RFC assessment.

87, Performance 97, and Full Scale IQ was 87. The ALJ also noted that Plaintiff's grades from the first two semesters of ninth grade, just before she dropped out of school, were very good, consisting mostly of A's and A-'s. (Tr. 24B, 446-47). At that time, Plaintiff's teacher noted that she was "doing an excellent job academically" and "work[ed] well independently as well as within a group." (Tr. 24B). As found by the ALJ, the record contained significant evidence that contradicted Plaintiff's IQ scores during her examination with Dr. Seifert. (Tr. 24B).

Furthermore, although the ALJ rejected Dr. Seifert's IQ testing, the ALJ's decision fully accounted for all of the limitations in Dr. Seifert's opinion. At step-two of the sequential analysis, the ALJ determined that Plaintiff's borderline intellectual functioning was a severe impairment. Moreover, Dr. Seifert opined that Plaintiff had mild or moderate limitations in four work-related mental categories. (Tr. 196). Consistent with these findings, the ALJ concluded that Plaintiff's mental impairments resulted in moderate work-related limitations. As such, the undersigned finds that the ALJ properly weighed the opinion of Dr. Seifert.

    *3. Dr. Holliday*

Last, Plaintiff argues that the ALJ erred in giving little weight to Dr. Holliday's statement that Plaintiff's "depressed mood [and] irritability preclude employment at this time." (Tr. 26; Doc. 6 at 11). In rejecting Dr. Holliday's disability findings, the ALJ found that Dr. Holliday's opinion was inconsistent with his most recent treatment note from November 2008, when he stated that Plaintiff was stable and "doing well" on her medications, which she had just resumed taking after her pregnancy. (Tr. 26, 232). Upon careful review, the undersigned finds that the ALJ properly evaluated Dr. Holliday's statement in accordance with agency regulations and controlling law.

Here, Dr. Holliday's undated disability opinion does not cite to any objective evidence or clinical findings in support of his conclusion.  The form simply indicates that Plaintiff has been diagnosed with Bipolar disorder and that depressed mood / irritability "preclude employment at this time."  As noted above, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for [his] rejection."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *See also* 20 C.F.R. §1527(d)(2).  Likewise, where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994).

Plaintiff appears to argue that Dr. Holliday's opinion should have been afforded controlling weighting because Dr. Bishop's subsequent treatment notes "evidence that Plaintiff continued to have problems with crying spells, anger and mood swings."  (Tr. 473-492).[7]  However, there is no indication from the record that such symptoms preclude employment.  It is well established a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment.  *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment).  *See* 20 C.F.R. § 404.1512(a) (Plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits).  More importantly, the record indicates that Plaintiff's mental symptoms were well-controlled when she took her medication, and she was often found to be doing well from a mental health standpoint.  (Tr. 232, 239, 242, 246).

---

[7] As noted above, Dr. Bishop took over Dr. Holliday's practice after he retired.

Based on the foregoing, the undersigned finds that the ALJ properly weighed the opinion evidence and his decision should not be disturbed in this regard.

### D.    Plaintiff's credibility

Plaintiff's final assignment of error asserts that the ALJ erred in evaluating Plaintiff's credibility.   In assessing Plaintiff's credibility the ALJ found that Plaintiff's testimony relating to severe back pain is not supported by objective evidence which reveals only mild findings.   Moreover, the ALJ also determined that Plaintiff's ability to paint houses in 2007 and 2008 also made her allegations of disabling pain and functional limitations less credible. The ALJ further found that Plaintiff's daily activities were not consistent with Plaintiff's claims of disability.   Specifically, the ALJ noted that Plaintiff testified that she is able to cook and do a lot of cleaning.   The ALJ also found that Plaintiff is able to care for the needs of her 2 small children.

The ALJ's credibility decision must also include consideration of the following factors:   1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96-7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-41 (6th Cir. 2002).

Here, Plaintiff argues that the ALJ improperly placed great weight on her daily activities, including her ability to perform household chores and care for her two small children, as well as her previous work as a house painter. Notably, Plaintiff maintains that the ALJ failed to consider that she needed assistance taking care of her children and that her children were currently living with her mother. Plaintiff further asserts that the third-party statement from Judy Walls indicates that Plaintiff forgets food on the stove, is unreliable to do housework and cannot go to the store alone. Plaintiff's assertions are unavailing.

Despite Plaintiff's arguments to the contrary, the ALJ did not mischaracterize or selectively rely on Plaintiff's activities. Although Plaintiff testified that her children were currently being cared for by her mother, she also testified that she previously lived with her children for two years, was their primary caretaker and was able to care for their needs. (Tr. 645). Plaintiff testified that she is able to cook Ramen Noodles, Pot Roast in a crock pot and Hamburger Helper by reading the directions on the box. (Tr. 646-47). Plaintiff further testified that she cleans and vacuums frequently.

Moreover, the ALJ did not rely on these daily activities alone in making his credibility decision; he also considered the opinions of numerous medical sources found in the record, the objective evidence and clinical findings, and Plaintiff's inconsistent statements relating to her use of marijuana. (Tr. 25, 26).

20

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible.  The ALJ's credibility finding is entitled to deference and thus should be affirmed.  *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003).

**III.  Conclusion and Recommendation**

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MEAGAN WALLS,                                          Case No. 1:11-cv-413

        Plaintiff,                                 Barrett, J.
                                                       Bowman, M.J.
   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of

the filing date of this R&R.  That period may be extended further by the Court on timely

motion by either side for an extension of time.  All objections shall specify the portion(s)

of the R&R objected to, and shall be accompanied by a memorandum of law in support

of the objections.  A party shall respond to an opponent's objections within **FOURTEEN**

**(14) DAYS** after being served with a copy of those objections.  Failure to make

objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas*

*v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).