UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Meagan Walls,

    Plaintiff,

    v.                                    Case No. 1:11cv413

Commissioner of Social Security        Judge Michael R. Barrett

    Defendant.

## ORDER

This matter is before the Court upon the Magistrate Judge's July 18, 2012 Report and Recommendation ("R&R") which recommends that the ALJ's finding of non-disability be affirmed. (Doc. 10.)

Notice was given to the parties under 28 U.S.C. §636(b)(1)(c). Plaintiff filed timely objections to the Magistrate Judge's R&R. (Doc. 13.)

The Magistrate Judge found that the ALJ: (1) properly determined that Plaintiff was capable of sustaining remunerative employment; (2) did not improperly assign greater weight to the opinion of the non-examining physician; and (3) did not selectively rely on Plaintiff's daily activities as evidence that she is capable of performing gainful activity.

In her objections to the R&R, Plaintiff first argues that the ALJ did not specifically address the third-party witness statement of Judy Walls, Plaintiff's sister-in-law.[1] However, as the Magistrate Judge noted, the ALJ specifically stated that he carefully considered all

---

[1] In her statement, Walls explains that Plaintiff "takes care of her 8 month old child, with help of baby's father. Clean - help with some household chores. Sometimes visit with family members [sic]." (Tr. 105.)

of the evidence, including documents identified in the record as exhibits, testimony at the hearing, and any arguments presented. Moreover, the ALJ did not reject the statement of Walls. For these reasons, the cases cited by Plaintiff are distinguishable. *Smith v. Heckler*, 735 F.2d 312, 316 (8th Cir. 1984) ("ALJ failed to accord proper weight to uncontradicted lay evidence from Smith's family and supervisors . . . Instead, the ALJ appears to have reached his decision almost exclusively on the strength of the report of the Secretary's consulting physician; *Hughes v. Commissioner of Social Security Administration*, 403 F. App'x 218, 221 (9th Cir. 2010) ("In rejecting the lay witnesses' written statements, the ALJ overlooked concerns about Hughes's learning disability, fatigue and physical limitations.")).

The Sixth Circuit's decision in *Hurst v. Secretary of Health & Human Services*, 753 F.2d 517, 519 (6th Cir. 1985) is also distinguishable. In *Hurst*, the ALJ failed to address a treating physician's assessment and the Sixth Circuit held that the decision was not supported by substantial evidence. *Id.* at 518-521. However, the court's decision was based on numerous other reasons including: reliance on potentially fraudulent consultative examinations; the ALJ incorrectly characterized some of the physician's earlier reports as contradictory to her subsequent assessment; and the ALJ incorrectly dismissed objective medical findings. *See id.* at 519-21. These reasons are not present in this case.

Here, this Court concludes that it was not error for the ALJ to fail to specifically address the third-party witness statement of Walls. "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Dykes*

*ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467 (6th Cir. 2004) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)).

Plaintiff's second objection is that the ALJ improperly relied on the opinion of the reviewing physician, Dr. Khan, instead of giving deference or controlling weight to Plaintiff's treating physician, Dr. Holliday. Plaintiff argues that the ALJ should not have relied upon Dr. Khan's analysis since Dr. Khan did not have all of Dr. Holliday's records when conducting his analysis.

As the Magistrate Judge explained, if the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Here, the ALJ provided specific reasons for assigning Dr. Holliday's opinion reduced weight:

> Reduced weight is given to Dr. Holloway's [sic] statement in Exhibit 17 F, page 3 that depressed mood/irritability precluded employment at this time. The date is unclear, but the date last examined seems to have been January 6, 2009. The undersigned agrees with Dr. Khan's refutation of Dr. Holliday's conclusion on October 14, 2008 (Exhibit 12F, p.3). Also, Dr. Holliday's last documented treatment note dated November 14, 2008 is inconsistent with his conclusion (Exhibit 17F, pp. 7-8). Dr. Holliday, inter alia, stated that the claimant was doing well on her present medications. She had just restarted them after stopping due to pregnancy. Dr. Holliday's physical exam was essentially unremarkable except for some trigger points and some twitching in the claimant's right lower extremity. However, there were no abnormalities of the spine to be palpated or inspected. Also, there was no clonus, and the Babinski's was negative. Sensation was normal.

(Tr. 26) Therefore, the Court concludes that the ALJ gave proper weight to the opinion of

Dr. Khan.

Plaintiff also argues that Dr. Khan's assessment "is suspect since the typing is in two different fonts and type." However, the form appears to be a standard medical form for "Functional Capacity Assessment," and the instructions to the doctor are in one font, while the information input into the form by Dr. Khan is in another font. (Tr. 200) The argument that different font types make the form "suspect" is not persuasive.

Plaintiff next argues that the ALJ erred by acting as a medical expert when he referred to Plaintiff's good grades in her first year of high school to discredit Dr. Siefert's findings on Plaintiff's low IQ. However, the ALJ is not substituting his own medical opinion for Dr. Seifert's. Instead, there is conflicting medical evidence regarding Plaintiff's IQ scores, namely that during a school evaluation in 2004 Plaintiff obtained IQ scores of Verbal 87, Performance 97, and Full Scale IQ was 87. Dr Seifert's testing resulted in IQ scores of 77 verbal, 70 performance and 72 full scale (Tr. 194), which led Dr. Seifert to diagnose Plaintiff with borderline intellectual functioning (Tr. 195). Importantly, the ALJ noted: "Reduced weight is given to the opinion of the consultative psychologist, Dr. Seifert, that the results were valid as he apparently was unaware of prior intelligence testing administered to the claimant during a school evaluation on February 19, 2004." (Tr. 24B.) Therefore, the ALJ's discussion of the IQ scores was properly a part of the ALJ's discussion of conflicting evidence.

Plaintiff next argues that a treating physician's opinion is entitled to controlling weight if well-supported by objective medical evidence and consistent with other substantial evidence in the record. However, as noted above, the ALJ explained that "Dr. Holliday's last documented treatment note dated November 14, 2008 is inconsistent with his

conclusion (Exhibit 17F, pp.7-8)."  Thus, the ALJ did not give controlling weight to Dr. Holliday because his opinion was not consistent with other substantial evidence in the record.

Plaintiff's final objection is that Plaintiff's ability to do daily activities support a finding of disability.  Plaintiff cites *Barker-Bair v. Commissioner of Social Security*, 2008 WL 926569, at *11 (S.D. Ohio April 03, 2008) for the proposition that a claimant's ability to perform limited and sporadic tasks does not mean that she is capable of full-time employment.  However, as the Magistrate Judge explained, the ALJ did not only rely on Plaintiff's daily activities in making his credibility decision.  The ALJ considered the opinions of numerous medical sources found in the record, the objective evidence and clinical findings, and Plaintiff's inconsistent statements relating to her use of marijuana.  The ALJ also noted:

> Her treatment has been conservative and has not involved surgery.  Despite her complaints of severe back pain, the claimant testified that she is able to perform cooking and a lot of cleaning.  She is also able to take care of the needs of her two small children, ages 2 ½ years and eight months. These daily activities are not consistent with disabling pain.  Although the undersigned believes that the claimant experiences some degree of myofascial back pain, he does not feel that such pain would preclude the performance of work activity within the confines of the limitations set forth in the residual functional capacity assessment.

(Tr. 25-26)[2]  Therefore, this Court concludes that *Barker-Bair* is distinguishable because

---

[2]In comparison, the court in *Barker-Bair* stated:

Furthermore, with respect to the alleged inconsistency regarding plaintiff's ability to engage in daily activities, the ALJ noted that plaintiff is able to feed, dress, bathe, and groom herself, and take care of her personal hygiene needs. He further noted that she goes to the store, reads, gardens, and goes on the computer.  However, the ALJ failed to note that plaintiff testified that she has good days and bad days. On a good day, she is able to do some

the ALJ in this case properly considered all of the evidence.

## VIII.  CONCLUSION

Based on the foregoing, the Magistrate Judge's July 18, 2012 R&R is hereby **ADOPTED**.  Accordingly, the ALJ's finding of non-disability is **AFFIRMED**, and this matter should be **CLOSED** and **TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

                                                    */s/ Michael R. Barrett*
                                              Michael R. Barrett, Judge
                                              United States District Court

---

activities, such as housecleaning.  On a bad day, she remains bedridden (Tr. 418.)  Moreover, her sister noted that when plaintiff tries doing things on a good day, "it can put her down for days at a time" afterwards. (Tr. 116.)

*Barker-Bair v. Comm'r of Soc. Sec.*, 2008 WL 926569, at *11.